UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

NICKALUS T. HOLT,

       Plaintiff,

  v.                                NO. 5:19-cv-250-JMH

SPECIALIZED LOAN SERVICING LLC, *et al.*,

       Defendants.

**SPECIALIZED LOAN SERVICING LLC'S MOTION TO DISMISS**

Defendant Specialized Loan Servicing LLC (SLS) respectfully moves the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss each of the claims against it by Plaintiff Nickalus Holt.

**INTRODUCTION**

This action arises out of Holt's default on a mortgage loan serviced by SLS and a subsequent insurance claim that was made after Holt's default. At this point, Holt has not made a payment on the mortgage property *in almost five years* and has repeatedly refused any attempts at loss mitigation or loan modification. Instead, much as he has done in the separate, underlying foreclosure action, Holt attempts to continue to litigate issues that already have been decided, that could (and should) have been previously raised but were not, or that otherwise are entirely fabricated for the sole apparent purpose of impeding SLS's ability to make any recovery on Holt's default—in short, this action represents little more than Holt's continued efforts to delay and frustrate the final resolution of the underlying foreclosure proceedings, which have now been ongoing for more than four-and-a-half years. The Court should not abide such actions and, for the reasons below, should grant this motion and dismiss with prejudice Holt's meritless claims against SLS in Counts I–VI and VIII–X.

Specifically, and as discussed more fully below, the Court should dismiss each of Holt's

claims for the following reasons:

- Holt's claims in Counts VI, VIII, IX, and X relative to lender-placed insurance are precluded by Rule 13(a) and otherwise barred by the doctrine of claim preclusion and the rule against splitting causes of action;

- Holt's conversion claim in Count I cannot withstand dismissal because SLS had the legal and contractual authority to hold the insurance check (the allegedly converted property), both as a co-owner of that check and pursuant to the terms of Holt's mortgage;

- Holt's fraud claim in Count II fails because Holt does not plead any actual reliance and because his own allegations foreclose any possible showing that such reliance was reasonable;

- Holt's Kentucky Consumer Protection Act (KCPA) claim in Count III fails as a matter of law because, under well-established precedent, the KCPA does not apply to real-property transactions (such as mortgages) or to lenders and mortgage servicers such as SLS;

- Holt cannot maintain any actionable intentional infliction of emotional distress (IIED) claim in Count IV because he fails to plead any facts to show (1) that his alleged emotional harm was "severe or serious," (2) that SLS's alleged conduct was done with intent to cause him emotional distress, or (3) that SLS's alleged actions even remotely approach the sort of "outrageous" conduct required for IIED claims;

- Holt's claim in Count V must be dismissed because punitive damages are not a standalone cause of action under Kentucky law;

- Holt's unjust enrichment claim in Count VI cannot survive dismissal because that equitable theory has no application where, as here, the parties' relationship is governed by an express contract;

- Holt's tortious interference claim in Count VIII fails to state a cognizable claim for relief because Holt neither alleges, nor can he show, any breach by the third party here;

- Holt's second KCPA claim in Count IX fails for same reasons as his earlier claim in Count III, and for the additional reasons that this theory is time-barred under the statute of limitations and that the KCPA has no application under the facts alleged; and

- Holt's second punitive damages claim in Count X must be dismissed for the same reasons as Count V because, again, punitive damages is not a standalone claim.

## RELEVANT FACTS

**I.     Background concerning the separate foreclosure action pending against Holt**

SLS filed a foreclosure complaint against Holt in Woodford Circuit Court on December 11, 2014, in the matter *Specialized Loan Servicing, LLC v. Nickalus T. Holt, et al.*, No. 14-CI-00363 (hereinafter "*Holt I*").[1]  That foreclosure action arose from Holt having defaulted on his payment obligations under his mortgage loan for the property at 393 Winton Road in Versailles, Kentucky.  (*See generally* **Exhibit 1**, *Holt I* Compl. (filed Dec. 11, 2014).)[2]

Holt filed a counterclaim in those proceedings in December 2015 alleging (1) violations of Regulation X of the Dodd-Frank Act, (2) breach of contract, (3) negligent infliction of emotional distress, and (4) punitive damages.  (**Exhibit 3**, *Holt I* Countercl. (filed Dec. 9, 2015).)  In May 2017, the circuit court entered an order granting SLS's motion for judgment on Holt's counterclaims for violation of Regulation X and for negligent infliction of emotional distress, finding that neither "was sufficiently plead to yield a cause of action."  (**Exhibit 4**, *Holt I* Order (entered May 25, 2017).)[3]

Two months later, Holt filed a motion for leave to amend his answer and counterclaims. (**Exhibit 5**, *Holt I* Mot. for Leave to File Am. Answer & Countercl. (filed July 27, 2017).)  Along with that motion, Holt tendered his proposed first amended answer and counterclaim, which sought to allege, among other things, a new claim against SLS based on allegations that SLS

---

[1] The proceedings in the foreclosure action are subject to judicial notice under Fed. R. Evid. 201.  *E.g.*, *Chau v. Traditional Bank, Inc.*, 2011 U.S. Dist. LEXIS 49907, at *5 & n.2, 2011 WL 1769377 (E.D. Ky. May 9, 2011); *see also Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (recognizing that public records, such as the pleadings filed in a state court action, are generally considered "not to be subject to reasonable dispute" for purposes of Fed. R. Evid. 201).

[2] Though not attached to his instant complaint, Holt's mortgage appears in numerous instances in the record of the underlying foreclosure proceedings.  (*See* **Exhibit 1** at 13–29, *Holt I* Compl. & exs. thereto (filed Dec. 11, 2014); **Exhibit 2** at 24–40, *Holt I* Mot. for Summ. J., Def. J. & Order of Sale & exs. thereto (filed July 17, 2018).)

[3] The circuit court also correctly noted at that time that "Punitive Damages do not represent a stand-alone cause of action."  (*See* **Exhibit 5**, *Holt I* Order (entered May 25, 2017).)

(1) failed to pay his homeowners insurance; (2) falsely informed his property insurer, Met Life, that he had abandoned the property, leading to Met Life's decision to terminate his homeowners policy; and (3) acquired lender-placed insurance on the property at a higher cost than the Met Life policy, thereby causing him to suffer damages. (**Exhibit 6**, *Holt I* Proposed 1st Am. Answer & Am. Countercl. (filed July 27, 2017).)  The circuit court summarily denied Holt's motion for leave to amend his counterclaim by order of May 30, 2018. (**Exhibit 7**, *Holt I* Order (entered May 30, 2018).)[4]

SLS then moved for summary judgment relative to its foreclosure complaint as well as Holt's remaining counterclaim. (**Exhibit 2**, *Holt I* Mot. for Summ. J., Def. J. & Order of Sale (filed July 17, 2018).)  Holt opposed that motion and requested additional time to conduct discovery. (**Exhibit 8**, *Holt I* Resp. (filed Aug. 6, 2018).)  In February 2019, the circuit court denied SLS's motion in order to allow Holt additional time for discovery; however, noting the "delay in this case," the circuit court specifically ordered "discovery to be completed within 60 days" and instructed that SLS may resubmit its motion for summary judgment and order of sale at that time. (**Exhibit 9**, *Holt I* Order (entered Feb. 1, 2019).)  In an apparent violation of that order, Holt attempted to serve additional discovery requests on SLS some 112 days later on May 24, 2019. (*See* **Exhibit 10**, *Holt I* Notice of Service (filed May 24, 2019).)

## II.      Holt's allegations in the present action[5]

This action arises from the same mortgage loan and the same nucleus of facts at issue in the underlying foreclosure action outlined above.  Apparently unwilling to accept the circuit court having denied his request for leave to assert new counterclaims in the those proceedings,

---

[4] The circuit court's May 30, 2018, order was silent as to Holt's request to amend his answer.  However, the circuit court subsequently granted that request by order of January 31, 2019.

[5] As is required for purposes of this motion only, SLS presumes the truth of Holt's factual allegations.

Holt proceeded to file a new lawsuit asserting those same allegations of wrongdoing—which the circuit court previously disallowed—under the guise of various new, albeit meritless, theories.

Through his instant complaint, Holt admits that his mortgage required him to maintain homeowners insurance on the subject property.  (*See* DN 1-1 at 6, Compl. ¶ 9.)  Holt further acknowledges that, in the event he failed to maintain such insurance, the mortgage allowed SLS acquire a lender-placed insurance policy.  (*See id.*)  Specifically, the pertinent provision of the mortgage provides, in relevant part:

> **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. . . .
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type of amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secure by this Security Instrument. . . .

Holt previously obtained his own property insurance through Met Life for the policy period of March 23, 2014, through March 23, 2015.  (DN 1-1 at 6, Compl. ¶ 11.)  Holt alleges that, in November 2014, SLS informed Met Life that he was no longer using the property as his primary residence, which he claims was not correct.  (*See id.* ¶ 13.)  Holt claims that, as a result, "Met Life unilaterally decided not to renew [his] Policy upon the expiration of same on March

23, 2015." (*Id.* ¶ 14.)[6]  Holt acknowledges that he received multiple notices from SLS requesting updated proof of homeowners insurance and informing him that SLS would obtain lender-placed insurance, if necessary, in accordance with the terms of the mortgage.  (*See id.* ¶¶ 16, 20–23.)  SLS did, in fact, thereafter obtain lender-placed insurance on the property consistent with its contractual right to do so under the mortgage.  Holt nevertheless complains about the amount charged for that lender-placed insurance, alleging that SLS received "kickbacks" from the other named defendants.  (*Id.* ¶ 28.)

Holt asserts that the mortgaged property was damaged by a storm in mid-July 2018.  (*Id.* ¶ 32.)  Notably, at that time Holt had not made a mortgage payment in four years, and the underlying foreclosure proceedings had already been pending for over three years and seven months.  Regardless, Holt states that less than two weeks after that damage occurred his new property insurer issued a check "payable jointly to SLS and Mr. Holt" in the amount of $12,583.75, which was then sent to SLS.  (*Id.* ¶ 33.)  Holt claims he asked SLS to endorse that check over to him directly because he "had elected to have three different companies perform the necessary repair work."  (*Id.* ¶ 34.)  After SLS could not reach an agreement with Holt concerning the disbursement of those insurance proceeds, the check eventually voided because it had not been deposited within 90 days and, thereafter, was reissued in the same manner on December 17, 2018.  (*Id.* ¶¶ 34–35.)  He states he subsequently was informed by SLS that it had received and cashed the reissued check.  (*Id.* ¶ 36.)  He alleges that SLS further informed him that it had documentation on file authorizing it to endorse the check in his name to facilitate deposit.  (*Id.* ¶ 36.)  Holt insists that SLS had no such authorization.  (*Id.* ¶ 39.)

---

[6] Of note, at the point that Holt's Met Life policy expired in March 2015, he had already been in default on his payment obligations to SLS for some 9 months.

Based on these allegations, Holt purports to assert nine separate claims against SLS, which he groups into categories of "claims concerning the claim payment" (Counts I–V) and "claims concerning the force-placed insurance scheme" (Counts VI, VIII–X).[7]

## ARGUMENT

Holt's claims against SLS should be dismissed for several reasons.  Holt's lender-placed insurance claims (Counts VI, VIII–X) are precluded by Rule 13(a) and also barred by the doctrine of claim preclusion and the rule against splitting causes of action.  But even if they were not procedurally barred, dismissal is warranted under Rule 12(b)(6)[8] because each of Holt's nine counts against SLS (Counts I–VI, VIII–X) either fails to plead an actionable claim or otherwise is not cognizable as a matter of law.

**I.**     **Holt's lender-placed insurance claims are precluded by Rule 13(a) and are barred by the doctrine of claim preclusion and the rule against splitting causes of action**.

Holt's claims against SLS in this lawsuit relative to lender-placed insurance are procedurally barred for several reasons, and Counts VI, VIII, IX, and X should be summarily dismissed on these grounds alone.

First, Holt's claims are precluded by Rule 13(a)(1)(A), which governs compulsory counterclaims and mandates that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Holt's instant

---

[7] Count VII for tortious inference is the only claim in Holt's ten-count complaint that is not asserted against SLS. (*See* DN 1-1 at 16–17, Compl. ¶¶ 69–73.)

[8] To survive dismissal under Rule 12(b)(6), a plaintiff must provide the grounds for his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79.

claims concerning lender-placed insurance indisputably arose prior to the filing of his initial

counterclaim in the underlying foreclosure proceedings in December 2015.  Consequently, these

claims were compulsory at that time.[9]  Moreover, Holt's claims concerning lender-placed

insurance effectively advance the same allegations of wrongdoing that he previously sought—

and was denied—leave to assert in the foreclosure proceedings back in 2017.  Holt cannot

subvert the requirements of Rule 13(a), nor can he sidestep the circuit court's order expressly

denying his prior request to amend his counterclaim, simply by filing a new lawsuit years later

that repackages the same untimely (and meritless) allegations.  For this reason alone, Counts VI,

VIII, IX, and X should be summarily dismissed.

Second, Holt's several claims against SLS additionally are barred by the doctrine of

claim preclusion.  The doctrine of claim preclusion serves to bar subsequent claims that could

have been raised in a previous action:  "The law is clear that successive suits involving the same

alleged injury or transaction are barred when the legal theories raised in the second action could

have been raised in the first, whether or not the elements of proof are the same."  *Cox v. Tenn.*

*Valley Auth.*, 16 F.3d 1218, 1994 U.S. App. LEXIS 2703, at *9 (6th Cir. 1994).  That is, claim

preclusion acts as a bar "'not only as to every matter which was offered and received to sustain

or defeat the claim or demand, but as to any other admissible matter which might have been

offered for that purpose.'"  *Nevada v. United States*, 463 U.S. 110, 129–30 (1983); *see also*

*Coomer v. CSX Transp.*, 319 S.W.3d 366, 374 (Ky. 2010) (recognizing that "claim preclusion . . .

appl[ies] broadly to any claim which 'might have been brought forward at the time").  Claim

preclusion thus serves "to promote the finality of judgments and thereby increase certainty,

---

[9] Ky. R. Civ. P. 13.01, which governed Holt's compulsory counterclaims at that time, is nearly identical to its federal counterpart insofar as it requires that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim."

discourage multiple litigation, and conserve judicial resources." *Westwood Chem. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Because any additional claims or theories Holt has (or may have had) against SLS necessarily could—and should—have been brought in the underlying foreclosure action, his attempt to belatedly assert such claims through a new action are barred by the doctrine of claim preclusion, and Counts VI, VIII, IX, and X should be dismissed.

Third, Holt's lender-placed insurance claims against SLS similarly are barred by the rule against splitting causes of action, which limits to a single proceeding all causes of action arising out of the same nucleus of facts. *See Coomer*, 319 S.W.3d at 371.

> [The rule] rests upon the concept that parties are required to bring forward their whole case and may not try it piecemeal. Therefore, it applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Id.* (citations and internal quotation marks omitted). Like claim preclusion, the rule against splitting causes of action applies broadly to any claim that "might have been brought" in the prior litigation. *Id.* at 374. Plaintiff's claims in Counts VI, VIII, IX, and X arise out of the same basic nucleus of facts that were at issue in the underlying foreclosure action—indeed, Holt already either asserted, or unsuccessfully attempted to assert, these same claims in those separate proceedings. Consequently, Holt's lender-placed insurance claims against SLS are barred by the rule against splitting causes of action, and should be dismissed on that basis as well.

## II.   Procedural bars aside, dismissal is warranted under Rule 12(b)(6) because Holt fails to plead any actionable claim for relief against SLS.

Even assuming Holt's claims were not otherwise barred, his complaint still fails to plead any viable claim for relief against SLS. Because each of his nine counts against SLS either fails

to plead an actionable claim or otherwise is not cognizable as a matter of law, dismissal is appropriate under Rule 12(b)(6).

> **A.      Holt fails to assert an actionable conversion claim in Count I.**

"Conversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014) (citation omitted).  A claim for conversion consists of seven elements:

> (1) the plaintiff had legal title to the converted property;
>
> (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;
>
> (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
>
> (4) the defendant intended to interfere with the plaintiff's possession;
>
> (5) the plaintiff made some demand for the property's return which the defendant refused;
>
> (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and
>
> (7) the plaintiff suffered damage by the loss of the property.

*Id.* (citation omitted).  The legal authority to act has long been recognized as a valid defense to an intentional tort claim such as conversion.  *See Wade v. City of Richmond*, 2005 Ky. App. Unpub. LEXIS 30, at *3, 2005 WL 1593748 (Ky. Ct. App. July 8, 2005) (citing *Palmer v. Commonwealth*, 252 S.W.2d 677 (Ky. 1952)).  Furthermore, a plaintiff "is prohibited at law from using the tort[] of conversion . . . to avoid the enforcement of [a defendant's] clear contractual rights." *Gulf Coast Farms, LLC v. Fifth Third Bank*, 2013 Ky. App. Unpub. LEXIS 303, at *17, 2013 WL 1688458 (Ky. Ct. App. Apr. 19, 2013), *review denied*, 2014 Ky. LEXIS 70 (Ky. Feb. 12, 2014).

Holt bases his conversion claim on alleged actions by SLS relative to the insurance claim check issued in mid-2018.  Because those actions were either expressly authorized by the

mortgage or do not involve the exercise of wrongful control over property belonging to Holt, Holt cannot maintain a viable conversion claim as a matter of law.

Holt essentially alleges that SLS wrongfully refused to turn over the funds it received from his insurance company to repair damage to the mortgaged property.  Critically, however, Holt admits that the insurance company "issued a check . . . payable jointly to SLS and Mr. Holt."  (DN 1-1 at 11, Compl. ¶ 33.)  Holt's claim for conversion founded on that insurance check fails because, by his own allegations, SLS was a co-owner of that check.  Holt thus did not have clear title to the insurance check, nor did he have the exclusive right to possess that check as required for conversion under Kentucky law.  *E.g.*, *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 826 (E.D. Ky. 2013) ("[T]he property converted must be property which the plaintiff has the exclusive right to control." (citation omitted)); *CNH Capital Am. v. Hunt Tractor*, 2015 U.S. Dist. LEXIS 125459, at *9 n.3, 2015 WL 5554020 (W.D. Ky. Sept. 21, 2015) ("In order for a conversion to occur, the property converted must be property which the plaintiff has the exclusive right to control." (citing 13 KY. PRAC. TORT L. § 8:4 (2014 ed.))).  Accordingly, Holt cannot satisfy the first or second element of a claim for conversion, and Count I fails accordingly.

Additionally, the mortgage provides that "[u]nless Lender and Borrower otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration or repair of the property," and expressly permitted SLS to hold the insurance check and release the proceeds "in a single payment or in a series of payments as the work is completed."  (**Exhibit 1** at 19.)  The mortgage further provides that "Lender shall have the right to hold such insurance proceeds until the Lender has had an opportunity to inspect [the] Property to ensure the work has been completed to the Lender's satisfaction."  (*Id.*)  By Holt's own allegations, the only sticking points to

disbursing the insurance proceeds were the facts that Holt had "elected to have three different companies" perform the repairs and that Holt insisted SLS endorse the insurance check "over to [him] so that he could pay the three repair companies directly." (DN 1-1 at 11–12, Compl. ¶ 34.) Holt, however, was not entitled to have the insurance check endorsed over to him as he requested; SLS, on the other hand, did have the right to hold that check until Holt complied with the terms of the mortgage, and that contractual right forecloses Holt's conversion theory. *See Gulf Coast Farms*, 2013 Ky. App. Unpub. LEXIS 303, at *17; *Wade*, 2005 Ky. App. Unpub. LEXIS 30, at *3.

Consequently, because SLS had legal and contractual authority to hold the insurance check—both as a co-owner of the check and pursuant to the terms of the mortgage—Holt's conversion claim fails and must be dismissed.

**B.      Holt's fraud claim in Count II fails as a matter of law.**

Holt fails to plead any cognizable claim for fraud. "A party claiming fraud must establish six elements *by clear and convincing evidence*: a) material representation, b) which is false, c) known to be false or recklessly made, d) made with inducement to be acted upon, e) acted in reliance thereon, and f) causing injury." *Farmers Bank & Tr. Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (emphasis added) (citation omitted)). "Intent to deceive is a necessary element of actionable fraud." *Id.* (citing *Smith v. Barton*, 266 S.W.2d 317 (Ky. 1954)). Where the facts alleged "merely show inferences, conjecture, or suspicion, or such as to leave reasonably prudent minds to doubt, it must be regarded as a failure of proof to establish fraud." *Jaffee v. Davis*, 2003 Ky. App. Unpub. LEXIS 700, at *15, 2003 WL 2002783 (Ky. Ct. App. May 2, 2003) (citing *Goerter v. Shapiro*, 72 S.W.2d 444 (Ky. 1934)).

Holt's fraud claim points to two alleged misrepresentations: (1) that SLS told him that the mortgage and/or insurance policy required him to take additional actions to facilitate the

application of the claim check to the repairs performed on the property, when, in fact, neither the mortgage or the policy required such additional actions; and (2) that SLS told him it had obtained documentation on file that authorized it to sign Holt's name to the insurance check, when, in fact, SLS had no such authorization.  (DN 1-1 at 12–14, Compl. ¶¶ 36, 39, 48–49.)  Holt's fraud claim is fatally flawed for several reasons.

First, this claim fails because Holt cannot establish any reliance on these alleged misrepresentations.  Indeed, the complaint fails to allege any facts to show that Holt actually relied on either of those alleged statements.  (*See id.* ¶¶ 48–52.)  For that reason alone, Count II fails to state an actionable fraud theory.

Second, even assuming Holt had pleaded reliance, as a matter of law he cannot establish that any such reliance was *reasonable* under the circumstances alleged.  Indeed, his own allegations foreclose any such showing.  As the Western District recently explained:

> [T]he plaintiff's reliance must have been reasonable; he still must exercise common sense to protect himself. Specifically, if a party could have learned of the basis of the fraud, or if he could have uncovered it by ordinary vigilance and attention, his failure to do so deprives him of a remedy.

*Republic Bank & Tr. Co. v. Bear*, 707 F. Supp. 2d. 702, 710 (W.D. Ky. 2010) (internal citations and quotation marks omitted).  Accordingly, one to whom a misrepresentation allegedly is made "is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him."  *Thomas v. Schneider*, 2010 Ky. App. Unpub. LEXIS 699, at *10, 2010 WL 3447662 (Ky. Ct. App. Sept. 3, 2010) (quoting RESTATEMENT (SECOND) OF TORTS § 541); *see also First Tech. Capital, Inc. v. JPMorgan Chase Bank, N.A.*, 53 F. Supp. 3d 972, 994 (E.D. Ky. 2014) ("Reliance is not justified if a party knows of the representation's falsity or if its falsity is obvious to the party.").  It follows that, as a matter of law, reliance cannot be reasonable "when either minimal investigation would have revealed the truth, or when [the relying party] closes its eyes and

passively accepts the contradictions that exist in the information available to it." *Claypool v.*

*Brock*, 2011 Ky. App. Unpub. LEXIS 617, at *9, 2011 WL 3793419 (Ky. Ct. App. Aug. 26, 2011)

(citation omitted).

Whether any claimed reliance here was reasonable can be answered as a matter of law.

Here, Holt alleges that SLS misrepresented to him the terms of his mortgage and/or insurance

policy. Holt necessarily had the opportunity—simply by reviewing his own mortgage and

policy—to ascertain the correctness of any alleged statements by SLS. Similarly, whether Holt

had authorized SLS to endorse his name on the insurance check is information necessarily

known to Holt. In either case, the truth or falsity of these alleged misrepresentation were either

already known to Holt or could have been discovered through minimal investigation. Because

Holt "had access to information that . . . would have led to discovery of the true facts, [he] had

no right to rely upon the misrepresentation." *First Tech. Capital*, 53 F. Supp. 3d at 994 (quoting

*Lamb v. Branch Banking & Trust Co.*, 2009 Ky. App. Unpub. LEXIS 1057, at *10, 2009 WL

4876796 (Ky. Ct. App. Dec. 18, 2009)). Count II should therefore be dismissed.

**C.     Holt's KCPA claim in Count III fails as a matter of law because the KCPA is
inapplicable here.**

The KCPA prohibits unfair, false, misleading, and deceptive acts or practices in the

conduct of any trade or commerce. *See* Ky. Rev. Stat. (KRS) § 367.170(1). The statute applies

specifically to applies to "[a]ny person who purchases or leases *goods* or *services* primarily for

personal, family or household purposes and thereby suffers any ascertainable loss of money or

property, real or personal, as a result of the use or employment by another person of a method,

act or practice declared unlawful by KRS 367.170." *See* KRS 367.220(1) (emphasis added).

The KCPA does not apply, however, to "real estate transactions by an individual homeowner"

because those transactions do not include the purchase or lease of any goods or services. *Craig*

*v. Keene*, 32 S.W.3d 90, 91 (Ky. Ct. App. 2000). This point is now well settled in Kentucky law. *E.g.*, *Frakes v. Specialized Loan Servs., LLC*, 2018 Ky. App. Unpub. LEXIS 156, at *3, 2018 WL 1358023 (Ky. Ct. App. Mar. 16, 2018) (reaffirming that that the KCPA does not apply to claims relating to real property or a mortgage on real property); *Joiner v. Tran & P Props., LLC*, 526 S.W.3d 94, 103 (Ky. Ct. App. 2017) (reiterating that the KCPA "does not apply to individual real estate transactions"); *Todd v. Ky. Heartland Mortg., Inc.*, 2003 Ky. App. Unpub. LEXIS 5, at *7– 8, 2003 WL 21770805 (Ky. Ct. App. Aug. 1, 2003) ("[W]e hold that the [KCPA] is not applicable because this is a real estate transaction by an individual homeowner.").

The Kentucky Court of Appeals has further explained that "the term 'real estate transaction,'" as used in *Craig*, "encompass[es] *any transaction involving or touching upon real estate.*" *Todd*, 2003 Ky. App. Unpub. LEXIS 5, at *7 (emphasis added). Because mortgages necessarily "involve or touch upon real estate," they constitute a "real estate transaction by an individual homeowner" that is not subject to the KCPA. *Id.* (holding that the KCPA did not apply to the plaintiffs' mortgage loan). Following *Todd*, both this Court and other Kentucky federal courts have consistently held that the KCPA does not apply in these circumstances to mortgage lenders and servicers, such as SLS. *See, e.g.*, *Riley v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 77258, at *15, 2017 WL 2240570 (E.D. Ky. May 22, 2017); *Busch v. Wells Fargo Home Mortg., Inc.*, 2017 U.S. Dist. LEXIS 3456, at *18–19, 2017 WL 82473 (E.D. Ky. Jan. 9, 2017); *GMAC Mortg., LLC v. McKeever*, 2010 U.S. Dist. LEXIS 91118, at *19, 2010 WL 2635959 (E.D. Ky. Aug. 31, 2010); *Johnson v. Nationstar Mortg. LLC*, 2017 U.S. Dist. LEXIS 125094, at *13, 2017 WL 3401303 (W.D. Ky. Aug. 8, 2017); *Mattox v. Wells Fargo, NA*, 2011 Bankr. LEXIS 3139, at *24, 2011 WL 3626762 (U.S. Bankr. E.D. Ky. Aug. 17, 2011).[10]

---

[10] Furthermore, and in addition to the abundance of case law on the issue, the statutory language of the KCPA demonstrates that it does not apply to mortgage lenders and servicers, such as SLS. If the General Assembly had

In sum, Holt's KCPA claim in Count III is expressly founded on the underlying mortgage loan, (*see* DN 1-1 at 14–15, Compl. ¶¶ 53–57), and because the KCPA does not apply to the circumstances here, Count III should be dismissed as a matter of law.

### D.    Holt fails to plead any viable IIED claim in Count IV.

A plaintiff asserting an IIED or "outrage" claim must establish that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there is a causal connection between the conduct and the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff is severe. *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). In *Osborne v. Keeney*, the Kentucky Supreme Court held that a plaintiff may recover emotional distress damages "only for 'severe' or 'serious' emotional injury." 399 S.W.3d 1, 17 (Ky. 2012). The Court stated that a severe or serious emotional injury arises when a "reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id.* at 17. Thus, to be entitled to emotional damages, the alleged distress must "significantly affect the plaintiff's everyday life or require significant treatment." *Id.* at 17–18. This is because "emotional tranquility is rarely attained and . . . some degree of emotional harm is an unfortunate reality of living in a modern society." *Id.* at 17. In assessing the severity of alleged emotional harm, courts consider factors such as the intensity of the harm,

---

intended for the KCPA to apply to all mortgage lenders and servicers, the language of the KCPA would illustrate such an intent. Instead, the language of the KCPA demonstrates that the General Assembly intended for the KCPA to apply only to a small subset of mortgage servicers who service "high cost" loans. KRS 367.320, entitled "Processing of Payments By Servicer of High Cost Loan," carves out a limited category of mortgage servicers to whom the KCPA applies and requires that those servicers satisfy certain statutory requirements. Under KRS 367.320(1), the term "servicer" "means any person or entity who currently collects or processes payments on a *high-cost home loan, as that term is defined in KRS 360.100*." (emphasis added). In order to qualify as a high cost loan under KRS 360.100, various thresholds have to be met. *See* KRS 360.100(1)(a)(5) (discussing the definition of a "high-cost home loan"). The significance of the statutorily defined term "servicer" cannot be ignored. Had the General Assembly meant to include all lenders and servicers, it certainly could have, but it did not. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011) ("It is fundamental that in determining the meaning of a statute, we must defer to the language of the statute and are not at liberty to add or subtract from the legislative enactment or interpret it at variance from the language used.") Holt does not allege that the underlying mortgage loan on which Count III is based was a "high-cost home loan."

the duration of the harm, and the character or nature of the defendant's conduct.  *Id.* at 17 n.59
(referencing RESTATEMENT (SECOND) TORTS § 46 (1977)).  Holt's boilerplate IIED claim fails as
a matter of law for several reasons.

First, Holt fails to plead any facts to suggest that his alleged emotional harm was "severe
or serious."  For this reason alone, he fails to plead a colorable IIED claim under Kentucky law.
*See, e.g.*, *Morcus v. Medi-Copy Servs.*, 2017 U.S. Dist. LEXIS 195485, at *27, 2017 WL
5760867 (E.D. Ky. Nov. 28, 2017) (dismissing IIED claim because the plaintiff "has not alleged
any facts to suggest that his emotional harm was severe or serious"); *Bailey v. Aramark Corp.*,
2017 U.S. Dist. LEXIS 141565, at *11, 2017 WL 3841687 (E.D. Ky. Sept. 1, 2017) (dismissing
the plaintiff's IIED claim upon finding that his alleged distress "does not constitute the kind of
'serious' or 'severe' emotional injury required to state an IIED claim").

Second, Holt pleads no facts to suggest that SLS's alleged conduct was done with the
intent to cause severe emotional distress.  (*See* DN 1-1 at 15, Compl. ¶¶ 58–61.)  Consequently,
he cannot establish the first element of his IIED claim.  *See Hall v. City of Williamsburg*, 2017
U.S. Dist. LEXIS 135638, at *29, 2017 WL 3668113 (E.D. Ky. Aug. 24, 2017) (dismissing IIED
claim upon concluding that "[the plaintiff's] conclusory allegation that [the defendant] acted
intentionally is insufficient to satisfy the applicable pleading standard"); *Busch*, 2017 U.S. Dist.
LEXIS 3456, at *20 (holding that "the [plaintiffs] have failed to state a claim for intentional
infliction of emotional distress" where "there is no suggestion that [the defendant] undertook
such alleged conduct with the intent to cause severe emotional distress"); *Bailey*, 2017 U.S. Dist.
LEXIS 141565, at *11 (recognizing that "where the plaintiff merely alleges that emotional
distress resulted from the defendants' conduct, not that their sole purpose in engaging in that
conduct was to inflict that distress, the allegations . . . fail to state a viable IIED claim"); *Vidal v.*

- 17 -

*Lexington Fayette Urban Cty. Gov't*, 2014 U.S. Dist. LEXIS 124718, at *23, 2014 WL 4418113

(E.D. Ky. Sept. 8, 2014) ("Without any allegation that the defendants solely intended to cause

extreme emotional distress, [the plaintiff] has failed to state a claim for intentional infliction of

emotional distress."); *see also Ramey v. St. Claire Med. Ctr.*, 2004 Ky. App. Unpub. LEXIS 973,

at *13–14, 2004 WL 2481393 (Ky. Ct. App. Nov. 5, 2004) (affirming judgment on IIED claim

where there was nothing to suggest that the defendants "intended to cause emotional distress to

[the plaintiff]").

Third, Holt pleads no facts that would even remotely qualify as the sort of "outrageous

and intolerable" conduct necessary to establish the second element of his IIED claim.  "It is the

court's duty to determine, in the first instance, whether the defendant's conduct may reasonably

be regarded as so extreme and outrageous as to permit recovery."  *Runkle v. Fleming*, 558 F.

App'x 628, 634 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Stringer v. Wal-Mart*

*Stores*, 151 S.W.3d 781, 788–89 (Ky. 2004)); *see Futrell v. Douglas Autotech Corp.*, 2010 U.S.

Dist. LEXIS 32698, at *11, 2010 WL 1417779 (W.D. Ky. Apr. 2, 2010) (same); *Goebel v. Arnett*,

259 S.W.3d 489, 493 (Ky. Ct. App. 2007) (same).  As another Kentucky federal court explained:

> Kentucky courts have set a high threshold for outrage claims, and in
> Kentucky, a claim for the tort of outrage requires the plaintiff to prove
> conduct which is so outrageous in character, and so extreme in degree, as to
> go beyond all possible bounds of decency, and to be regarded as atrocious,
> and utterly intolerable in a civilized community.

*Osborn v. Haley*, 2008 U.S. Dist. LEXIS 28764, at *15–16, 2008 WL 974578 (W.D. Ky. Apr. 8,

2008) (internal citations and quotation marks omitted) (quoting *Humana of Ky. v. Seitz*, 796

S.W.2d 1, 3 (Ky. 1990)).  This high standard is roundly recognized in Kentucky law.  *E.g.*,

*Morcus*, 2017 U.S. Dist. LEXIS 195485, at *26 ("The law in Kentucky is restrictive in defining

what constitutes outrageous conduct."); *Stuart v. Lowe's Home Ctrs., LLC*, 2017 U.S. Dist.

LEXIS 178132, at *15, 2017 WL 4875281 (W.D. Ky. Oct. 26, 2017) ("This claim is only

reserved for especially serious cases."), *aff'd*, 737 F. App'x 278 (6th Cir. 2018); *Craft v. Rice*,

671 S.W.2d 247, 250–51 (Ky. 1984) (describing the requisite conduct for an IIED claim as "a

deviation from all reasonable bounds of decency [that] is utterly intolerable in a civilized

community").

Commonly cited examples of alleged conduct that falls *below* the requisite threshold

include:

- displaying a lack of compassion, patience, and taste by ordering a female patient who had just delivered a stillborn child to "shut up" and then informing her that the stillborn child would be "disposed of in the hospital";
- wrongfully converting the plaintiff's property in a manner that breached the peace;
- allowing a vehicle to leave the road, striking and killing a child;
- committing "reprehensible" fraud during divorce proceedings by converting funds belonging to the defendant's spouse for the benefit of the defendant and his adulterous partner;
- wrongfully terminating the plaintiff;
- erecting a billboard referencing a person's status as a convicted child molester;
- wrongfully garnishing the plaintiff's wages pursuant to a forged agreement; and
- impregnating the plaintiff's wife.

*Puri v. Baugh*, 2015 U.S. Dist. LEXIS 79025, at *22–23, 2015 WL 3796346 (W.D. Ky. June 18,

2015) (reciting a list of examples from *Stringer*, 151 S.W.3d at 790–91).[11]

Here, even assuming the truth of Holt's allegations, nothing about SLS's alleged conduct

even approaches the high threshold for the sort of "outrageous and intolerable" conduct

necessary to satisfy the second element of an IIED claim.  A dispute over the payment of

insurance proceeds (particularly where SLS was a co-owner of, and contractually authorized to

---

[11] *Cf. Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 238 (Ky. Ct. App. 2001) (finding the defendant's conduct to be sufficiently outrageous where he subjected plaintiff to nearly daily racial indignities for approximately seven years).

hold, such proceeds) does not rise even remotely close to "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community."  Indeed, Kentucky federal courts  have expressly recognized that the mere "[f]ailure to make 'payment . . . cannot be the basis for an action for outrageous conduct causing emotional distress.'"  *Hume v. Quickway Transp.*, 2016 U.S. Dist. LEXIS 77831, at *32, 2016 WL 3349334 (W.D. Ky. June 15, 2016) (quoting *Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 343 (Ky. 1986)); *see Jaglowicz v. Tex. Life Ins.*, 2008 U.S. Dist. LEXIS 46636, at *27–28 n.11, 2008 WL 2437535 (W.D. Ky. June 12, 2018) (applying *Zurich Ins.* to reiterate: "Simply 'refusing to pay, however arbitrary or unreasonable,' was found to fall short of what is required to proceed on an IIED claim." (alteration omitted)).

Because Holt has not pleaded any conduct by SLS that could conceivably qualify as "outrageous and intolerable," he fails to plead a viable IIED claim under Kentucky law.  *See, e.g.*, *Hall*, 2017 U.S. Dist. LEXIS 135638, at *28–30 ("[T]he Complaint does not contain any factual allegations of conduct that would qualify as outrageous or intolerable.  [The plaintiff] has failed to state a claim for intentional infliction of emotional distress."); *Stuart*, 2017 U.S. Dist. LEXIS 178132, at *15–16 ("[The] intentional infliction of emotional distress claim must be dismissed as the Complaint does not allege any extreme or outrageous conduct."); *see also Stuart*, 737 F. App'x at 280 (affirming dismissal of IIED claim where "[the plaintiff] fails to point to any facts or law rendering it plausible that [the defendant] did anything 'outrageous and intolerable' that would 'offend[] against generally accepted standards of decency and morality.'").  As a result, Count IV should be summarily dismissed.

### E.   Holt's claim in Count V should be dismissed because "punitive damages" is not a standalone claim and because Holt cannot recover such damages under the facts alleged.

A claim for punitive damages is not a standalone claim; punitive damages merely represent a potential remedy that might be available for another cause of action.  *E.g.*, *Dalton v.*

*Animas Corp.*, 913 F. Supp. 2d 370 (W.D. Ky. 2012); *Salisbury v. Purdue Pharm., L.P.*, 166 F. Supp. 2d 546, 548 n.1 (E.D. Ky. 2001).  For this reason alone, Count V should be dismissed.[12]

Moreover, Holt cannot recover such damages under the facts alleged.  "Punitive damages are damages other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct." *Ashland Dry Goods v. Wages*, 195 S.W.2d 312, 315 (1946); *see* KRS 411.184(1)(f).  Kentucky law is clear that "punitive damages are reserved for only the most egregious acts and recoverable only if it is proven by clear and convincing evidence that an opposing party acted with oppression, fraud, or malice."  *Mo-Jack Distrib. v. Tamarak Snacks*, 476 S.W.3d 900, 911 (Ky. Ct. App. 2015).  Because Holt has pleaded no facts to show anything resembling "egregious acts" or any sort of "oppression, fraud, or malice"—let alone facts that might establish such allegations by "clear and convincing evidence"—as a matter of law Count V cannot withstand dismissal.

### F.  Holt cannot maintain a viable claim for unjust enrichment, and Count VI should be dismissed accordingly.

Holt's claim for unjust enrichment fails as a matter of law because an express contract governed the parties' relationship and obligations to one another.  Unjust enrichment is a theory of restitutionary relief where damages are based directly on a benefit conferred on and retained by a defendant.  *C.A.F. & Assocs. v. Portage*, 913 F. Supp. 2d 333, 349 (W.D. Ky. 2012); *J.P. White v. Poe*, 2011 Ky. App. Unpub. LEXIS 392, at *13, 2011 WL 1706751 (Ky. Ct. App. May 6, 2011). "The theory of unjust enrichment is an equitable doctrine, and the application of an equitable doctrine to the facts of a case is a question of law."  *Javier Steel v. Cent. Bridge*, 353

---

[12] Notably, Holt again attempts to assert standalone punitive damages claims—this time in two separate counts—despite the fact that the circuit court has already twice admonished him that punitive damages are not standalone causes of action. (*See* **Exhibit 4** at 1–2 ("Punitive Damages do not represent a stand-alone cause of action."); **Exhibit 9** at 2 n.1 ("This Court clarified that punitive damages were not a claim but a form of damages.").)

S.W.3d 356, 359 (Ky. Ct. App. 2011) (citations omitted).  In order to recover under Kentucky law

for unjust enrichment, a plaintiff must prove the following three elements: "(1) benefit conferred

upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and

(3) inequitable retention of benefit without payment for its value."  *Jones v. Sparks*, 297 S.W.3d

73, 78 (Ky. Ct. App. 2009).  Crucially, "[t]he doctrine of unjust enrichment has no application in

a situation where there is an explicit contract which has been performed." *Graves v. Std. Ins. Co.*,

2016 U.S. Dist. LEXIS 111035, at *4, 2016 WL 4445479 (W.D. Ky. Aug. 19, 2016); *see also*

*Tractor & Farm Supply v. Ford New Holland*, 898 F. Supp. 1198, 1206 (W.D. Ky. 1995) (same).

Consequently, a plaintiff cannot recover under the implied or quasi-contract theory of unjust

enrichment "when a valid, express contract covers the subject matter of the parties' dispute."

*Holmes v. Countrywide*, 2012 U.S. Dist. LEXIS 96587, at *35, 2012 WL 2873892 (W.D. Ky.

July 12, 2012).

    The legal fiction of unjust enrichment has no application under the facts alleged here, and

this claim should be summarily dismissed.  Just to briefly recap, the underlying loan went into

default in or around July 2014, and Holt has failed to make any mortgage or escrow payment

since that time.  What occurred thereafter is exactly what Holt's mortgage anticipated, and SLS

complied with the terms of that mortgage by obtaining lender-placed insurance on the property

after Holt's homeowners policy expired in March 2015.  Holt had the right to secure his own

homeowners insurance prior to that time, but he ultimately failed to do so.  The parties'

respective rights and obligations in this regard were governed by the terms of the mortgage, and

there is no allegation that SLS's procurement of lender-placed insurance was improper under

that express agreement.  Accordingly, the equitable doctrine of unjust enrichment has no

application here, and Count VI should be dismissed accordingly.

**G.     Holt's claim for tortious interference (Count VIII) fails to state a cognizable claim for relief on the facts alleged.**

Kentucky law limits the business tort of intentional interference with contractual relations to one of two expressly defined circumstances: interference with a third party's performance of an existing contract with the plaintiff, or interference with the plaintiff's prospective contractual relations not yet reduced to contract.  Holt appears to base his claim in Count VIII on the former by alleging that SLS interfered with his existing business relationship with his then-insurer, Met Life.  (*See* DN 1-1 at 17–18, Compl. ¶¶ 74–78.)[13]

A claim for tortious interference with a third party's performance of an existing contract is derived from the RESTATEMENT (SECOND) OF TORTS § 766.  *See Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533–34 (Ky. Ct. App. 2005).  "[T]o recover under this specific theory, [a plaintiff] must prove the following elements: (1) the existence of a contract; (2) Defendants' knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages to [the plaintiff]; and (6) Defendant had no privilege or justification to excuse its conduct."  *Atmos Energy*, 2013 Ky. App. Unpub. LEXIS 77, at *51–52 (quoting *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995)).  "At a minimum, to be actionable, [the plaintiff] must show that a contract existed between it and a third party *followed by a breach by the third party*."  *Id.* at *52 (emphasis added) (quoting *CMI*, 918 F. Supp. at 1079); *see also Indus. Equip. Co. v. Emerson*

---

[13] To the extent Plaintiff intends to base this claim on the second permissible theory—intentional interference with prospective business relations not yet reduced to contract—such claim also would fail as a matter of law.  This potential theory "is concerned only with intentional interference with prospective contractual relations, not yet reduced to contract" and, thus, has no application to allegations of interference with an existing contract.  *Atmos Energy Corp. v. Honeycutt*, 2013 Ky. App. Unpub. LEXIS 77, at *53, 2013 WL 385397 (Ky. App. Jan. 25, 2013) (internal quotation marks omitted).  Here, Plaintiff specifically alleges that SLS interfered with the *existing* relationship between Plaintiff and Met Life.  (*See* DN 1-1 at 17–18, Compl. ¶¶ 74–78.)  Accordingly, this potential species of tortious interference is inapposite here.  *See Atmos Energy*, 2013 Ky. App. Unpub. LEXIS 77, at *53.

*Elec. Co*, 554 F.2d 276, 289 (6th Cir. 1977) (reiterating that a necessary element of this tort is "a subsequent breach of the contract by the third party").

Holt does not allege that Met Life (the third party here) breached the Met Life policy. (*See* DN 1-1 at 17–18, Compl. ¶¶ 74–78.)  Rather, he alleges that Met Life "unilaterally decided to not renew [his] Policy upon the expiration of same." (*Id.* ¶ 14.)  Because Holt has not alleged any breach by Met Life of that policy, as a matter of law he cannot maintain an actionable claim for tortious interference.  *See, e.g.*, *Atmos Energy*, 2013 Ky. App. Unpub. LEXIS 77, at \*52 (holding that "[the cross-claim plaintiffs] have failed to assert a claim for intentional interference with contractual relations . . . because they have failed to allege that [the cross-claim defendant] caused a third party to breach a contract with them").  Count VIII should thus be dismissed.

### H.     Holt's second KCPA theory (Count IX) fails to state a viable claim for relief.

In Count IX, Holt advances another KCPA claim, this time based on the lender-placed insurance provision of his mortgage.  (*See* DN 1-1 at 18, Compl. ¶¶ 79–82.)  First and foremost, this claim fails for the same reasons as his other KCPA claim in Count III and should be dismissed accordingly.  (*See* Part II.C *supra*.)

Second, any KCPA claim based on SLS's lender-placed insurance is necessarily time-barred.  The statute of limitations for alleged KCPA violations is two years.  KRS 367.220(5) (mandating that "[a]ny person bringing a [KCPA] action . . . must bring such action . . . within two (2) years after the violation of KRS 367.170.").  Holt filed his complaint in this action on March 29, 2019.  (*See* DN 1-1, Compl.)  By Holt's own allegations, Met Life "unilaterally decided to not renew [Holt's] Policy upon the expiration of same on March 23, 2015," at which time SLS procured the complained-of lender-placed policy.  (*Id.* ¶¶ 14, 16.)  Therefore even assuming Holt could assert a viable KCPA theory based on SLS procuring that policy (which he

cannot), the statute of limitations expired some two years before his instant complaint was filed. Holt's KCPA claim in Count IX is thus time-barred under KRS 367.220 and should be dismissed.

And third, as it relates to SLS, this claim fails for the additional reason that Holt does not allege that he ever purchased or leased goods or services from SLS.  That Holt cannot maintain a KCPA claim against SLS under these circumstances is reinforced by the Kentucky Supreme Court's decision in *Stevens v. Motorists Mutual Insurance*, which expressly limited such claims relative to homeowners' insurance to the plaintiff's "own insurance company."  759 S.W.2d 819, 819, 821–22 (Ky. 1988) ("It is the holding of this Court that the [KCPA] provides a homeowner with a remedy against the conduct *of their own insurance company* pursuant to KRS 367.220(1) and KRS 367.170.").  SLS is not an insurance company and thus cannot be liable to Holt under the facts alleged.  Count IX accordingly should be dismissed for this reason as well.

**I.      Holt's second punitive damages claim (Count X) cannot withstand dismissal.**

As noted above, a claim for punitive damages is not a standalone claim.  *E.g.*, *Dalton*, 913 F. Supp. 2d at 378 (recognizing that "a claim for punitive damages is not a separate cause of action").  And, again, Holt has pleaded no facts to show anything resembling "egregious acts" or any sort of "oppression, fraud, or malice," let alone facts that might satisfy the "clear and convincing" standard required for punitive damages.  *See Mo-Jack Distrib.*, 476 S.W.3d at 911. Accordingly, for the same reasons discussed above relative to Holt's first punitive damages claim in Count V, (*see* Part II.E *supra* ), the Court should likewise dismiss Count X.

**CONCLUSION**

For the foregoing reasons, SLS respectfully requests that the Court grant this motion and dismiss with prejudice each of Holt's claims against SLS.

Respectfully submitted,

*/s/ Zachary M. VanVactor*

Neal F. Bailen
Zachary M. VanVactor
STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone:  (502) 587-3400
Email:  nbailen@stites.com
zvanvactor@stites.com
*Counsel for Defendant,*
*Specialized Loan Servicing LLC*

## INDEX TO EXHIBITS

| | |
|---|---|
| **Exhibit 1** | *Holt I* Compl. (filed Dec. 11, 2014) |
| **Exhibit 2** | *Holt I* Mot. for Summ. J., Def. J. & Order of Sale (filed July 17, 2018) |
| **Exhibit 3** | *Holt I* Countercl. (filed Dec. 9, 2015) |
| **Exhibit 4** | *Holt I* Order (entered May 25, 2017) |
| **Exhibit 5** | *Holt I* Mot. for Leave to File Am. Answer & Countercl. (filed July 27, 2017) |
| **Exhibit 6** | *Holt I* Proposed 1st Am. Answer & Am. Countercl. (filed July 27, 2017) |
| **Exhibit 7** | *Holt I* Order (entered May 30, 2018) |
| **Exhibit 8** | *Holt I* Resp. (filed Aug. 6, 2018) |
| **Exhibit 9** | *Holt I* Order (entered Feb. 1, 2019) |
| **Exhibit 10** | *Holt I* Notice of Service (filed May 24, 2019) |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk's office using the CM/ECF system and served via the Court's CM/ECF system upon all parties accepting electronic service on this 24th day of June 2019.

*/s/ Zachary M. VanVactor*

*Counsel for Defendant,*
*Specialized Loan Servicing LLC*