UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

NICKALUS T. HOLT,                )
                                 )
    Plaintiff,               )          Case No.
                                 )          5:19-cv-250-JMH
v.                               )
                                 )          **ORDER**
SPECIALIZED LOAN SERVICING,      )
LLC, *et al.*,                   )
                                 )
    Defendants.              )

                                     \*\*\*

This matter is before the Court on Defendant Specialized Loan Servicing, LLC's ("SLS") motion to dismiss Plaintiff Nickalus T. Holt's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [DE 8]. Holt responded [DE 13] and SLS replied [DE 18], making the motion ripe for review.

Holt alleges that SLS, as the servicer of his home mortgage, engaged in deceitful, fraudulent, and misleading practices regarding his home insurance policy. Because these allegations arose in a state court foreclosure action as part of Holt's counterclaim, and should have been brought in that action, Holt is precluded from bringing claims based on the same facts in federal court. Holt also claims that SLS fraudulently held and cashed an insurance claim check he believed he was entitled to. For the reasons stated below, the Court dismisses each of Holt's claims against SLS.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Holt's claims in the current litigation

In 2005, Holt executed a promissory note and a mortgage agreement to purchase a residential property in Versailles, Kentucky. [DE 1-1 at 6]. In addition to regular mortgage payments, Holt was required to pay into an escrow account for disbursement, in part, toward casualty and loss insurance on the property. [*Id.*]. Holt was required to maintain the insurance during the term of the mortgage. If he failed to do so, the mortgage agreement gave the lender the right to obtain lender-placed[1] insurance. [*Id.*]. SLS eventually acquired Holt's note and mortgage. [*Id.*]. Holt obtained the required insurance on March 23, 2014 from Metropolitan Property & Casualty Insurance Company ("Met Life"). [*Id.* at 6-7].

Holt alleges in his complaint that in mid-November 2014, SLS "falsely and fraudulently" reported to Met Life that Holt abandoned the residence and was no longer living there. [*Id.* at 7]. Thus, Holt claims, Met Life elected not to renew his policy when it expired on March 23, 2015. [*Id.*]. On March 25, 2015, Holt received a letter from SLS warning him that if he failed to obtain his own

---

[1] "Lender-placed" insurance is also known as "force-placed" or "creditor-placed" insurance. This Court prefers to use "lender-placed" to describe an insurance policy the lender selects when the homeowner's insurance policy lapses and he or she fails to obtain a new one.

2

insurance policy, the company would select a lender-placed policy that would likely be more expensive. [*Id*. at 9].

Holt believes he was unable to obtain replacement insurance coverage because of Met Life's cancellation. [*Id*. at 7]. SLS then, pursuant to the mortgage, procured a lender-placed policy through the Standard Guaranty Insurance Company, another defendant in this case. [*Id*. at 8]. Holt alleges that Standard Guaranty was either the exclusive or primary provider of lender-placed insurance coverage for mortgages serviced by SLS. [*Id*.]. He further alleges that SLS received kickbacks or "rebates" from Standard Guaranty's parent company when lender-placed insurance was required. [*Id*.].

Holt complains that SLS made no attempt to reinstate the Met Life policy or find another insurer at a lower rate. [*Id*. at 9]. He also argues that his insurance rates should have been lower because of the kickbacks SLS received, but that instead he was charged an artificially inflated amount for insurance. [*Id*.]. He further alleges that SLS charged him for some mortgage-servicing functions Standard Guaranty's parent company and subsidiaries performed that are already paid by borrowers. [*Id*. at 10].

On July 20, 2018, a storm caused damage to the Versailles residence. [*Id*. at 11]. After reporting the loss and having an inspection, Holt claims that Standard Guaranty issued a check for $12,583.75, payable to him and SLS. [*Id*.]. SLS allegedly did not advise Holt it received the claim payment. [*Id*.]. After several

discussions with SLS, in which Holt repeatedly requested that SLS endorse the check to him so he could pay three separate contractors for repairs to the property, Holt claims that SLS refused to disburse the funds to Holt without the authorization of the endorsement check in his name. [*Id.* at 12]. He alleges that the check was later cashed by SLS. [*Id.*]. Holt was never able to apply the insurance proceeds to the repair of the residence. [*Id.* at 13].

Holt filed a complaint in Woodford County Circuit Court on March 29, 2019 and it was removed to this Court on June 17, 2019. Holt alleged counts of conversion, fraud, a violation of the Kentucky Consumer Protection Act, intentional infliction of emotional distress, unjust enrichment, tortious interference with a business relationship, and he requests punitive damages.[2] [*Id.* at 14-19].

**B. Litigation in Woodford County Circuit Court**

In December 2014, SLS filed a foreclosure complaint against Holt. [DE 8 at 3; 8-1]. Holt filed a counterclaim in that action a year later, alleging violations of the Dodd-Frank Act, breach of

---

[2] A claim for punitive damages should not be construed as a separate cause of action, but as a potential remedy for a cause of action. *See Archey v. AT&T Mobility, LLC,* 2017 WL 6614106, *4 (E.D. Ky. Dec. 26, 2017). Thus, this Court will not consider punitive damages as a separate count or cause of action in its analysis. Additionally, because all of Holt's claims against SLS are dismissed per this memorandum opinion and order, his request for punitive damages is moot.

contract, and negligent infliction of emotional distress. [DE 8 at 3; DE 8-3]. Holt's counterclaim also alleged that SLS was required to and failed to pay for the policy, causing a lapse in coverage. [DE 8-3 at 3]. Further, he alleged that SLS then acquired home insurance through a separate and more expensive carrier. [*Id.*]. This, Holt claimed, was a violation of Regulation X of the Dodd-Frank Act, 12 C.F.R. § 1024.37, which specifically addresses "force-placed insurance" selected by loan servicers. [*Id.*].

On May 25, 2017, the Woodford County Circuit Court granted SLS's motion for judgment on the pleadings pertaining to Holt's claims of negligent infliction of emotional distress and violations of the Dodd-Frank Act. [DE 8-4 at 1]. Holt was allowed to proceed on a breach of contract theory. [*Id.*]. In July 2017, Holt asked the state court for leave to amend his answer and counterclaim. [DE 8-5]. The proposed counterclaim filed with the motion again brought up the Met Life policy and SLS's choice of lender-placed insurance within claims. [*Id.*]. The court denied Holt's motion for leave to amend his counterclaim. [DE 8-7].

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. The court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Thompson v. Bank of Am.,*

5

*N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it contains facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id*. "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

### III. DISCUSSION

Holt separated his complaint into two sections: one addressing his claims against SLS for the lender-placed home insurance policy and one addressing the way SLS handled the claim payment. The Court will attend to each section of allegations in the same manner.

### A. Claims pertaining to the lender-placed home insurance policy

SLS argues that Holt was required to bring the allegations in Counts VI, VIII, IX, and X in the Woodford County Circuit Court action, and to the extent that they were brought under a different legal theory, those allegations are barred by the doctrine of res judicata. These counts all relate to the lender-placed insurance policy and include allegations of unjust enrichment, tortious

6

interference with a business relationship, and a violation of the Kentucky Consumer Protection Act.

In federal and Kentucky courts, a defendant must bring all claims against an opponent arising out of the same transaction or occurrence that is the subject matter of that party's claim. Fed. R. Civ. P. 13(a); CR 13.01. If the party required to bring a claim fails to do so, a claim arising out of the same transaction or occurrence will be res judicata. *England v. Coffey*, 350 S.W.2d 163, 164 (Ky. 1971). Because the parties here did in fact litigate the lender-placed insurance issue and received a judgment on the merits, it is not necessary for the Court to decide if all claims related to that issue were compulsory in the original action.

Res judicata, or claim preclusion, is an affirmative defense in Kentucky[3] that bars repetitious suits involving the same cause of action. *Cadle Co. v. Gasbusters Production I, LP*, 509 S.W.3d 713, 718 (Ky.Ct.App. 2016). There are two forms of the doctrine: claim and issue preclusion. *Id.* Claim preclusion prevents parties from relitigating a "previously adjudicated cause of action," while issue preclusion more specifically bars the parties from

---

[3] When a federal court sits in diversity, "the question of res judicata is to be determined by reference to state law." *Waybright v. Columbian Mut. Life Ins. Co.*, 122 F.2d 245, 247 (6th Cir. 1941); *see also Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 849 (6th Cir. 2006)("Federal courts sitting in diversity must give to a state-court judgment the same preclusive effect as would be given to that judgment under the law of the State in which the judgment was rendered.")(internal quotations and citations omitted).

"relitigating any issue actually litigated and finally decided in an earlier action." *Id.* at 719.

In Kentucky, a claim is precluded by a previous cause of action when there is an identity of the parties, an identity of the claims, and a resolution of the prior action on the merits. *Id.; Preferred Auto. Sales, Inc. v. DCFS USA, LLC,* 625 F.Supp.2d 459, 462 (E.D. Ky. 2009)(citing *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998)). There is no dispute that there is an identity of the parties in the original action and the one before this Court. Additionally, the Woodford County Circuit Court certainly reached a final decision on the merits of Holt's lender-placed insurance allegation when it granted SLS's motion for judgment on the pleadings as to Holt's Regulation X counterclaim.

As to the less-clear issue of the identity claims, Kentucky courts follow a "transactional approach." *Preferred Auto. Sales, Inc.,* 625 F.Supp.2d at 462 (internal citations omitted). If two claims stem from identical underlying circumstances, considering the allegations in "factual terms," the various legal theories and forms of relief are less relevant. *Id.* at 462-63; *See also Smith v. Bob Smith Chevrolet, Inc.,* 275 F.Supp.2d 808, 813 (W.D. Ky. 2003)(citing *Dennis v. Fiscal Court of Bullitt Cty.*, 784 S.W.2d 608, 610 (Ky.Ct.App. 1990)). A new cause of action should not consist of *any* claims arising out of the same conduct or

8

transaction in the first pleading. *Id.* (citing *Conner v. Patton,* no. 2007-CA-575, 2008 WL 162875, at *3 (Ky.Ct.App., Jan. 18, 2008)(emphasis added)). Claim preclusion goes even further to bar not only the "points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970)(quoting *Combs v. Prestonsburg Water Co.*, 84 S.W.2d 15, 18 (1935)).

In the case before this Court, claims of unjust enrichment, tortious interference, and violations of the Kentucky Consumer Protection Act based on SLS's implementation of force-placed insurance were ripe at the time Holt filed his counterclaim. By then, Met Life's policy had lapsed and SLS had chosen a new policy pursuant to the mortgage agreement. In the counterclaim before the Woodford County Circuit Court, Holt states that "SLS immediately acquired property insurance through a separate carrier" and "it remains unequitable to require Mr. Holt to bear the substantial cost differential for the newly issued policy." [DE 8-3 at 3]. He alleges negligence and account mismanagement as a result of SLS's actions related to his insurance. The identity of the actions is further evidenced by the very statute Holt based his counterclaim in. The Dodd-Frank Act regulation cited deals directly with "force-

9

placed insurance" and requires lenders or servicers to abide by certain notice requirements before a borrower can be charged for insurance he or she did not select but is required to carry under the mortgage.

The basic factual basis for these claims and the ones concerning lender-placed insurance in this action is the same: SLS, through certain actions or inactions, caused Met Life to terminate its home insurance policy with Holt, which allowed the lender to select insurance that was more costly and provided less coverage. The Woodford County Circuit Court decided Holt did not have a viable claim under the facts alleged pursuant to the Dodd-Frank regulation and did not allow him to amend his counterclaim to elaborate on the lender-placed insurance complaint. The doctrine of claim preclusion makes clear that a plaintiff may not, after receiving unsatisfactory results in a counterclaim that failed to move forward, turn around and file a new action based on the same facts and injuries in another court. This Court cannot grant relief based on allegations that were or should have been litigated in the Woodford County Circuit Court, and thus, Holt's allegations related to SLS's lender-placed insurance policy and its implementation must be dismissed.

**B. Claims related to the insurance proceed payments**

Although Holt's claims based on his grievance of the policy itself are precluded as a matter of law, his allegations concerning

the claim payment are not. These claims arose only after Holt filed his counterclaim and was denied leave to amend it. Holt sues SLS for conversion, fraud, violations of the Kentucky Consumer Protection Act, and intentional infliction of emotional distress. The Court addresses each claim in turn.

*i. Conversion*

Holt's first count against SLS is for conversion. Holt claims that he, "along with SLS," had joint legal title to the claim payment. [DE 1-1 at 13]. He acknowledges that, under the terms of the mortgage, SLS is required to use claim payments for the repair or restoration of the property it insures. The mortgage also makes clear that the lender may hold payment of the claim proceeds until it can inspect the property and make sure it is properly repaired. But Holt argues that he had a right to possess the payment to pay the contractors when the check was written by Standard Guaranty.

In Kentucky, "conversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal. Inc.*, 454 S.W.3d 849, 853 (Ky.Ct.App. 2014). The following elements are required for a valid conversion claim: (1) the plaintiff had legal title to the converted property; (2) the plaintiff possessed the property or had the right to possess it at the time of conversion; (3) the defendant exercised dominion over the property in a way that denied the plaintiff's right to use and enjoy it, to the beneficial use

11

of the defendant; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff demanded the property's return and the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of property; and (7) the plaintiff suffered damage from the loss. *Jasper v. Blair,* 492 S.W.3d 579, 583 (Ky.Ct.App. 2016). The property allegedly converted must be in the plaintiff's exclusive right to control. *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Management, LLC,* 941 F.Supp.2d 807, 826 (E.D. Ky. 2013). Additionally, "a conversion action will not lie to enforce a mere obligation to pay." *Id.* at 827 (quoting *Agnew Truck Serv. V. Ranger Nationwide, Inc.*, No. 90-34 P(J), 1992 WL 437629, at *5 (W.D. Ky. Apr. 20, 1992)). Conversion claims will not lie if the right alleged arises out of a contractual right to compensation. *See id.* at 827-28.

The mortgage agreement between the parties to this action states:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property if the restoration or repair is economically feasible and the Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. … If the restoration or repair is not economically feasible or Lender's security would be lessened, the Insurance proceeds shall be applied to the sums secured by this

Security Instrument, whether or not then due, with the
excess, if any, paid to Borrower.

[DE 8-2 at 30]. Holt acknowledges that he and SLS had joint legal
title to the insurance proceeds. Additionally, it is clear from
the mortgage that the parties agreed about the conditioned release
of the insurance claim proceeds. Kentucky law is clear that a
plaintiff has no conversion claim where the right arises out of a
contractual agreement for compensation and where the plaintiff
lacks legal title to the property. Viewed in a light most favorable
to the plaintiff, Holt cannot bring a claim for conversion under
the facts he has alleged.

   *ii. Fraud*

   Next, Holt alleges that SLS falsely represented that
additional actions would be needed under the mortgage in order to
receive the insurance proceeds and that it had the authority to
endorse his name on the claim check. [DE 1-1 at 14]. Holt argues
that SLS knew the information was false.

   In Kentucky, the party claiming fraud must establish six
elements by clear and convincing evidence: (1) a material
representation was made, (2) that was false, (3) and was known to
be false or made recklessly, (4) was made with inducement to be
acted upon, (5) the plaintiff relied on the representation, and
(6) the plaintiff suffered injury as a result of the
representation. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d

13

464, 468 (Ky. 1999)(citing *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 259 (Ky.Ct.App. 1978)). The misrepresentation must relate to a past or present material fact that is likely to affect the conduct of a reasonable person and be an inducement of the contract. *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 45 (Ky. 2018); *U.S. Achievement Academy, LLC v. Pitney Bowes, Inc.,* 458 F.Supp.2d 389, 395 (E.D. Ky. 2006).

SLS argues that Holt's fraud count must be dismissed because (1) he did not plead specific facts showing he relied on the statements, and (2) it is clear on the face of the complaint that Holt knew of the falsity of the alleged statements made by the SLS employee, but still claimed to rely on them. Thus, SLS argues, Holt's reliance, if any, cannot be reasonable. Holt argues primarily that the reasonability of his actions is a question of fact inappropriate for resolution on a motion to dismiss.

After reviewing the complaint and pleadings, the Court agrees that Holt failed to allege facts indicating that he relied in any way on the alleged misrepresentation from the SLS employee regarding the claim check. There is no indication in the record that Holt believed what the SLS employee told him, inducing him to take some action or causing him to fail to act where he otherwise would have. [DE 1-1 at 12-13].

The Court must be cautious in disposing of a fraud claim based only on what appears to be a lack of justifiable reliance because

this issue is often a question of fact. *First Tech. Capital, Inc. v. JPMorgan Chase Bank, N.A.*, 53 F.Supp.3d 972, 994 (E.D. Ky. 2014). However, when minimal investigation would reveal the truth, or when the relying party simply accepts contradictory information, reliance is, as a matter of law, unreasonable. *Id*. at 994-95. Holt stated in the complaint that the employee's representation was "knowingly false." [*Id*. at 13]. This is perhaps because Holt would be the one to know if he ever gave SLS permission to sign a check for him. If he was unsure of this, Holt easily could have referred to his mortgage agreement and insurance policy. He also continued to contact SLS after hearing the employee's statement concerning the lender's ability to sign his name to the proceeds check. [*Id*.]. These facts together demonstrate that he did not reasonably rely on the information the SLS employee provided over the phone. This is not simply nitpicking over "magic words" as Holt alleges; the facts alleged by the complainant himself do not support a legal claim for fraud, even with the facts construed entirely in his favor.

*iii. Kentucky Consumer Protection Act*

Holt brings a claim against SLS for a violation of the Kentucky Consumer Protection Act, KRS § 367.170(1). This provision of Kentucky's code prohibits any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KRS § 367.170(1).

15

The parties disagree on the statute's applicability to the home insurance policy at issue and its relationship to the mortgage held by SLS. KRS § 367.220 states that "any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful" by the Act may bring a civil action. Kentucky's highest court has held that the purchase of an insurance policy is the purchase of a service intended to be covered by the Act. *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988). However, the Supreme Court of Kentucky has also held that the Kentucky Consumer Protection Act does not apply to individual real estate transactions because real property is not a "good." *Joiner v. Tran & P Properties, LLC,* 526 S.W.3d 94, 103 (Ky. 2017)(citing *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky.Ct.App. 2000)).

SLS argues that the action should clearly be barred because the terms governing the institution of a lender-placed policy are contained in the mortgage. Holt argues that he pays for home insurance on the property and the Kentucky Supreme Court has explicitly found that the purchase of home insurance is covered by the Act.

16

Notably, KRS § 367.120, which provides a description of the Kentucky legislature's intent in drafting the Act, states that the purpose is to protect the "consumer public and the ethical sellers of goods and services." The Kentucky Court of Appeals has held that "the insured who purchased the policy is the one who may properly have a claim for unfair practices against the insurer." *Anderson v. Nat'l Sec. Fire and Cas. Co.*, 870 S.W.2d 432, 435 (Ky.Ct.App. 1993).

In this case, Holt did not select his home insurer. When he did not renew his policy with Met Life or find another insurer, SLS selected an insurance carrier pursuant to the mortgage. The real issue in this case is not whether the insurance policy is a good, a service, or related to real estate. Instead, the issue is whether Holt has standing to bring the claim pursuant to the Kentucky Consumer Protection Act when he did not select the insurance carrier, but simply paid for coverage. He does not meet the definition of an insurance consumer under the Act.

Additionally, Holt cannot get around the fact that SLS is not the actual insurer. Despite the company's business relationship with Standard Guaranty, SLS is merely the lender who selected the insurance Holt was required to pay pursuant to the terms of the mortgage. Thus, the statute is inapplicable to Holt's claims and must be dismissed.

*iv. Intentional Infliction of Emotional Distress*

Holt's final substantive claim is for intentional infliction of emotional distress ("IIED") under Kentucky law. He claims that SLS acted "with flagrant, intentional and/or reckless disregard" toward Holt by holding the claim payment. To have a claim for intentional infliction of emotional distress in Kentucky, the plaintiff must show that (1) the wrongdoer's conduct is intentional or reckless; (2) the conduct must be so outrageous and intolerable that it offends the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)(citing *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984)).

SLS argues that Holt failed to state any facts plausibly demonstrating that he suffered severe or serious emotional harm, that SLS intended to cause him emotional distress, or that SLS's conduct was outrageous or intolerable. SLS correctly explains that Kentucky has a high threshold for IIED claims and that plaintiffs must plead at least some facts that, if true, indicate outrageous behavior on the defendant's part. Holt argues that "it is at the very least plausible" that the insurance claim withholding was done to cause emotional distress, considering the parties' litigious history.

18

Looking to the complaint, Holt's IIED count merely states the legal elements of an IIED claim without alleging any facts. [DE 1-1 at 15]. In the factual background section of the complaint, Holt states that he contacted SLS about the claim check following the storm and the company "proposed a delayed distribution scheme not logistically viable" because of Holt's selection of contracting work. [*Id.* at 12]. Following further disagreement about how and when the claim check would be paid out, SLS allegedly stopped responding to Holt's inquiries. [*Id.*]. After the reissued claim check was sent to SLS, Holt again contacted the company and was then informed that the check had been cashed and SLS had documentation allowing it to endorse the check on Holt's behalf. [*Id.*]. Holt made further demands of SLS, which the company failed to "meaningfully" respond to. [*Id.*].

At no point does Holt state any facts elaborating on his severe emotional distress. The only statement regarding Holt's state of mind following the above interaction is that "SLS' conduct with respect to the Claim Payment has caused Mr. Holt severe emotional distress." [*Id.* at 15]. Where a plaintiff fails to offer "a single factual allegation about the distress they suffered," while only alleging that they suffered from emotional distress, the party has only stated a "conclusion and recitation of the elements of the cause of action, and fails to demonstrate a claim that is plausible on its face." *Bargo v. Goodwill Indus. of*

19

*Kentucky, Inc.*, 969 F.Supp.2d 819, 828 (E.D. Ky. 2013). Information about Holt's own emotional distress is best known by him; his statements about the need for discovery to facilitate the IIED claim is unfounded in this regard. Because Holt failed to allege any facts supporting his allegation of severe emotional distress, his claim is not plausible and must be dismissed.

### IV. CONCLUSION

Having considered SLS's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Holt's arguments to the contrary, the Court finds that all claims against SLS must be dismissed. Accordingly, **IT IS ORDERED** as follows:

(1) Defendant Specialized Loan Servicing, LLC's motion to dismiss [DE 8] is **GRANTED**; and

(2) All claims against Defendant Specialized Loan Servicing, LLC are hereby **DISMISSED WITH PREJUDICE.**

This the 2nd day of January, 2020.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge